UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIAMOND ANDERSON,

Plaintiff,

-against-

MB NR MOTORS, LLC & CAPITAL ONE, N.A.,

Defendants.

25-CV-9016 (JGLC)

**OPINION AND ORDER**

JESSICA G. L. CLARKE, United States District Judge:

This case arises from Plaintiff Diamond Anderson's purchase of a used Hyundai Santa Fe. Plaintiff alleges that, after taking delivery of the vehicle, she discovered for the first time that the written sales agreement reflected an inflated purchase price and included costly undisclosed add-on products.

Plaintiff brings claims under the Truth in Lending Act, the New York Motor Vehicle Retail Installment Sales Act, the New York General Business Law, and of common law fraud, against Defendants MB NR Motors, LLC, the used car dealership that sold the vehicle, and Capital One, N.A., which financed the purchase.

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. For the reasons stated herein, the Court grants in part and denies in part Defendants' motion.

## BACKGROUND

The facts are taken from the Complaint and assumed to be true for the purpose of this motion. ECF No. 1 ("Compl."); *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (assuming facts from the complaints and supporting documents "to be true in reviewing a Fed. R. Civ. P. 12(b)(6) dismissal").

Plaintiff is an individual residing in the Bronx, New York. Compl. ¶ 7. Defendant MB NR Motors, LLC ("MB" or the "Dealer") is a New York corporation and used car dealership located in New Rochelle, New York. *Id.* ¶ 8. Defendant Capital One, N.A. ("Capital One" or the "Lender") is a "national banking association" that "provides automobile loans and loan servicing nationwide." *Id.* ¶ 9. Plaintiff alleges that Capital One is "assignee of Plaintiff's contracts with the Dealer." *Id.* ¶ 10.

In or around 2024, Plaintiff searched online for a used vehicle. *Id.* ¶ 11. Plaintiff found MB's advertisement for a used Nissan Rogue priced for $24,999.00. *Id.* Plaintiff contacted MB and made an appointment to see the Rogue. *Id.* However, on November 2, 2024, at the appointment at MB's store, Plaintiff was told that the Rogue "was no longer available." *Id.*

Plaintiff and MB's representative then discussed a used 2022 Hyundai Santa Fe, Vehicle Identification Number 5NMS6DAJ5NH382426 (the "Santa Fe" or the "Vehicle"). *Id.* ¶¶ 1, 12. The representative stated that the Vehicle was "certified preowned" and came with certain warranties, although the warranties were never further explained or confirmed in writing. *Id.* Plaintiff told the representative that she wanted to pay for the Vehicle outright, but the representative falsely told Plaintiff that she could not, and that the purchase must be financed. *Id.* ¶ 13. The representative told Plaintiff that she would be required to make a $15,260.00 down payment, to which Plaintiff agreed. *Id.* ¶ 14. Plaintiff alleges that the down payment "was taken from Plaintiff's debit card in three transactions for $4,000.00, $324.22, and $337.80." *Id.* The Court notes that this adds up to $4,662.02.

Plaintiff was presented with an electronic tablet and "told where and when to sign and initial." *Id.* ¶ 15. "Plaintiff was not given an opportunity to review any of the sale documents" prior to this signing. *Id.* ¶ 16. Plaintiff requested a copy of the documents and specifically, a

breakdown of the cost of the transaction. *Id.* ¶ 17. However, Plaintiff was told that she would be given copies of the sales documents the next day, when she returned to pick up the Vehicle. *Id.*

The next day, Plaintiff returned to take delivery of the Vehicle and was handed an envelope. *Id.* ¶ 18. Plaintiff discovered that among the sale documents she had electronically signed was a Retail Installment Simple Finance Charge Agreement (the "RISC"). *Id.* ¶ 19; *see also* ECF No. 16-2 at 5–9. Only four of the five pages of the RISC were provided to Plaintiff. Compl. ¶ 19. Plaintiff later obtained from the lender a copy of the complete RISC, including the previously missing fifth page, on which Plaintiff's electronic signature was affixed. *Id.* ¶ 20.

In reviewing the RISC, Plaintiff discovered that the cost of Vehicle was not as agreed. *Id.* ¶ 21. According to the RISC, the "Cash Price" of the Vehicle was "$12,657.00 more than the advertised and agreed upon sale price." *Id.* ¶¶ 11, 22. Specifically, the RISC showed a total sales price of $62,440.16, which consisted of a finance charge of $17,070.69, a cash price of $41,317.47, the New York state Motor Vehicle Inspection Fee of $37.00, a registration fee of $240.00, a dealer processing charge of $175.00, and a CCC service contract of $3,600. ECF No. 16-2 at 5–9. However, Plaintiff alleges that she "did not ask to purchase a service contract, did not agree to buy a service contract, and was never told that a service contract was being added to the transaction." Compl. ¶ 23.

Furthermore, the sales documents included a Vehicle Invoice, ECF No. 16-2 at 20, which, like the RISC, reflects a total price for the Vehicle of $62,440.16. *Id.* According to the Vehicle Invoice, this $62,440.16 total price includes: a $17,070.69 financing charge and a total cash price of $45,369.47. *Id.* The total cash price was further itemized as consisting of $27,239 for the Vehicle price, $3,600 for the service contract, $10,417 for optional equipment and after-sales services, a $175 for the dealer processing fee, a $37 state inspection fee, $3,661.47 in sales tax,

and $240 for license and title fees. *Id.* Additionally, pursuant to Plaintiff's Final Acceptance and Declination form, ECF No. 16-2 at 18–19, the $10,417 of add-on charges consist of Hyundai maintenance, key replacement, RoadVantage theft protection, and tire and wheel protection. *Id.*

Plaintiff alleges that "[a]t all relevant times[,] Defendants acted willfully and in bad faith." Compl. ¶ 24.

On October 30, 2025, Plaintiff initiated this action. *Id.* Plaintiff brings five claims:

- Count one: violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), and its implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226;
- Count two: violation of the New York Motor Vehicle Retail Installment Sales Act ("MVRISA"), N.Y. Pers. Prop. Law § 301 *et seq.*;
- Count three: deceptive trade practices, under N.Y. Gen. Bus. Law § 349(h) ("Section 349");
- Count four: false advertising, under N.Y. Gen. Bus. Law § 350 ("Section 350"); and
- Count five: common law fraud.

*Id.* ¶¶ 26–79. On December 22, 2025, Defendants filed the present Motion to Dismiss pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). ECF No. 15.

On January 30, 2026, the Court stayed discovery pending resolution of Defendants' motion. ECF No. 24. On February 5, 2026, Plaintiff filed her opposition. ECF No. 26 ("Opp."). On February 17, 2026, Defendants replied. ECF No. 28 ("Reply").

**LEGAL STANDARD**

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008)

(internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

## DISCUSSION

The Court considers Defendants' Motion to Dismiss Plaintiff's five claims for failure to state a claim in turn. First, the Court determines that Plaintiff has sufficiently stated a TILA claim against both MB, and its assignee, Capital One. Next, the Court concludes that MVRISA does not provide a private right of action, and thus Plaintiff's claim fails. The Court then denies dismissal of Plaintiff's Section 349, Section 350, and common law fraud claims.

### I. Defendants' Motion to Dismiss Plaintiff's TILA Claim Is Denied

Plaintiff's first cause of action alleges that Defendants violated TILA and its implementing Regulation Z, by failing to disclose the terms and fees of the RISC to Plaintiff. Compl. ¶¶ 26–43.

"The Truth in Lending Act, originally enacted in 1968, was the first federal consumer protection law." *Taub v. World Fin. Network Bank*, 950 F. Supp. 2d 698, 701 (S.D.N.Y. 2013). "As a remedial statute, it is intended to be construed liberally in favor of the consumer." *Zevon v.*

*Dep't Stores Nat'l Bank*, No. 12-CV-4970 (CM), 2013 WL 3479432, at *3 (S.D.N.Y. July 8, 2013). "TILA provides individual consumers with a cause of action against creditors who fail to comply with certain TILA requirements, and a TILA plaintiff seeking statutory damages is not required to establish she incurred actual damages arising from a technical violation of TILA." *Id.* at *4 (citing 15 U.S.C. § 1640(a); *Kurz v. Chase Manhattan Bank*, 273 F. Supp. 2d 474, 478 (S.D.N.Y. 2003)). "To that end, together with its implementing Regulation Z, and under specified circumstances, TILA requires disclosure of, among other things, the creditor's identity, the amount financed, and the finance charge." *Maddox v. Cap. One Auto Fin., Inc.*, No. 22-CV-7215 (RER), 2024 WL 4515922, at *3 (E.D.N.Y. July 31, 2024) (cleaned up) (citing *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 491 (2d Cir. 2014); 15 U.S.C. § 1638(a)(1), (a)(2)(A), (a)(3)).

TILA requires creditors to disclose any "finance charge" that they impose on consumers in a credit transaction. 15 U.S.C. § 1638(a)(3). A finance charge is defined as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction." 15 U.S.C. § 1605(a). "In order to be considered a finance charge, a charge must be incident to, or a condition of, the extension of credit." *Pechinski v. Astoria Fed. Sav. & Loan Ass'n*, 345 F.3d 78, 80 (2d Cir. 2003) (citing 15 U.S.C. § 1605(a)). "Based on the language of 15 U.S.C. § 1605(a), Regulation Z, and the official staff interpretation, courts have concluded that a creditor is obligated under § 1638(a)(3) to disclose as a finance charge any costs charged to customers buying on credit, but not charged to customers buying with cash, in [a] comparable transaction[]." *Poulin v. Balise Auto Sales, Inc.*, 647 F.3d 36, 39 (2d Cir. 2011).

Specifically, "[a]n increase in the base price of an automobile that is not charged to a cash customer, but is charged to a credit customer, *solely because he is a credit customer*, triggers TILA's disclosure requirements." *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 530 (E.D.N.Y. 2006) (quoting *Cornist v. B.J.T. Auto Sales Inc.*, 272 F.3d 322, 327 (6th Cir. 2001)). "Thus, in order to prevail on her claim that defendant car dealer failed to disclose this hidden finance charge, plaintiff must demonstrate a causal connection between the higher price and the extension of credit." *Id.* (cleaned up). For example, a court has agreed that a "defendant violated TILA by charging more to a credit buyer than a cash buyer," specifically, by increasing the advertised price of the vehicle to the cash price listed on the RISC. *Joseph v. Excellence Auto Trade LLC*, No. 16-CV-1534 (FB) (LB), 2017 WL 1157178, at *3 (E.D.N.Y. Feb. 10, 2017) (internal quotation marks omitted), *report and recommendation adopted,* 2017 WL 1154999 (E.D.N.Y. Mar. 27, 2017).

First, Plaintiff's claim arises from Defendants' alleged failure to honor the advertised sales price. Compl. ¶¶ 22, 34. Plaintiff alleges that this increase in price related to the Dealer's insistence that she finance the purchase rather than buy the Vehicle for cash. *See Id.* ¶¶ 12–15. Similarly, Plaintiff's TILA claim arises from Defendants' alleged addition of hidden add-ons, which Plaintiff also alleges were a "required purchase . . . [as] a condition of financing." Compl. ¶ 36. Such alleged conduct—charging higher prices than advertised and agreed upon—violates TILA. For example, in *Joseph v. Excellence Auto Trade LLC*, the court determined that a defendant automobile sales business violated TILA when its retail installment sales contract showed an "increase from the advertised price of the Vehicle to the cash price listed on the RISC," because this increase "constitute[d] a hidden finance charge which should have been disclosed under TILA." 2017 WL 1157178, at *3 (internal quotation marks omitted).

Furthermore, Plaintiff alleges that Defendants failed to give her a copy of the documents before she signed them. *See* Compl. ¶¶ 16–17. "To ensure the 'meaningful disclosure of credit terms' to consumers, TILA requires that creditors make the required disclosures in writing in a form the consumer can retain, and they must do so before the buyer becomes contractually obligated." *Joseph*, 2017 WL 1157178, at *3 (quoting *Mourning v. Fam. Publ'ns Serv., Inc.*, 411 U.S. 356, 364 (1973)). Regulation Z, 12 C.F.R. § Pt. 226, Supp. I, Subpt. C provides that "[t]he disclosure requirement is satisfied if the creditor gives a copy of the document containing the unexecuted credit contract and disclosures to the consumer to read and sign; and the consumer receives a copy to keep at the time the consumer becomes obligated." Therefore, MB's alleged refusal to provide Plaintiff with the sale documents and "breakdown of the cost of the transaction" prior to agreeing to the Vehicle sale violates TILA. Compl. ¶¶ 16–17.

None of Defendants' arguments to the contrary succeed. First, they claim that Plaintiff, in fact, had access to and signed the contracts at issue—which included the necessary disclosures, such as "the annual percentage rate, finance charge, amount financed, total of payments, and total sales price," and disclaimers regarding the add-on package. ECF No. 17 ("Mem.") at 2–8. However, this factual dispute cannot be resolved at the motion to dismiss stage, and the Court must credit Plaintiff's assertion that her signature was affixed to these agreements by MB, and Plaintiff never actually had a chance to review the agreements prior to "signing." Opp. at 2; *see* Compl. ¶ 15. Plaintiff alleged in the Complaint that she signed only an electronic tablet, and "was not directly presented with copies of any documents to which her signature or initials would be affixed until after the sale." Compl. ¶ 15. Therefore, Plaintiff has sufficiently alleged that the RISC and other sales documents, which included the inflated purchase price, add-ons, and disclaimers, were never disclosed to her.

Next, Defendants argue that Plaintiff's allegations that her signature was fraudulently affixed to the sales documents actually defeats her TILA claim, because TILA requires an underlying contract. *See* Reply at 10–12 ("Accordingly, either [P]laintiff executed the contract and is bound by the terms therein, necessitating dismissal of her TILA claim, or [P]laintiff's signature was forged and there is no contract, necessitating dismissal of her TILA claim."). TILA and Regulation Z do "presuppose a valid contract between a creditor and consumer to trigger a creditor's disclosure obligations." *Islam v. Lee's Motors, Inc.*, No. 17-CV-3955 (DLI), 2018 WL 4771884, at *3 (E.D.N.Y. Sept. 30, 2018).

However, caselaw differs as to whether allegation of signature forgery defeats TILA claims. For example, in *Favata v. JD Motors of CNY, Ltd.*, the court dismissed a TILA claim when the plaintiffs alleged that the defendant "never obtained their consent to e-sign the" retail installment contract, because "no TILA claim could be established in the absence of a valid contractual relationship between the parties, and a forged signature would render the [contract] void under New York law." No. 23-CV-1549 (BKS), 2025 WL 1649045, at *9 (N.D.N.Y. June 11, 2025) (internal quotation marks omitted). *See also Davis v. Westlake Servs., LLC*, No. 23-CV-6163 (VSB), 2025 WL 239411, at *3 (S.D.N.Y. Jan. 16, 2025) (dismissing a TILA claim when "Plaintiff allege[d] that he did not sign the [retail installment contract] and that his signature was forged," because the invalid contract "therefore cannot form the basis for TILA protection").

In contrast, in *Islam v. Lee's Motors, Inc.*, the Eastern District of New York denied dismissal of a TILA claim when a plaintiff "signed a blank electronic signature pad," after which the defendant auto dealer "digitally applied the signatures to the [retail installment contract] without authorization." 2018 WL 4771884, at *3 (E.D.N.Y. Sept. 30, 2018). The court determined that although the forged contract was "void under New York law," the pleaded facts

were still "sufficient to support the inference that [the parties] reached an agreement regarding the" retail installment contract, where the plaintiff "intended and attempted to enter into a finance agreement," "made a down payment and filled out a credit application," and "[d]espite the allegedly fraudulent inclusion of optional mechanical breakdown protection," "continue[d] to make monthly payments . . . and maintain[ed] possession of the Vehicle." *Id.* at *3–5 (quotation marks omitted). *See also Fairley v. Turan-Foley Imps., Inc.*, 65 F.3d 475, 481 (5th Cir. 1995) (reversing dismissal of a TILA claim, because even though there was no signed contract, the parties reached an oral agreement on financing terms for a car, and the car and initial payments were delivered and accepted despite inconsistent terms on an allegedly forged contract).

Here, the Court determines that at this stage of the proceedings, Plaintiff has alleged the existence of an agreement between herself and Defendants for the purchase of the Vehicle. Plaintiff alleges that she agreed to purchase the Vehicle, paid a down payment, and subsequently took delivery of the Vehicle. Compl. ¶¶ 14, 18. These allegations are sufficient to support the inference that Plaintiff and Defendants reached an agreement for the sale of the Vehicle. *Id.* Although Plaintiff alleges that Defendants later provided her with documents containing contractual terms that were inconsistent with their deal, those allegations do not, at this stage, negate the existence of an agreement between the parties regarding the Vehicle's sale. If it turns out that there is a valid contract, Plaintiff has certainly alleged a TILA claim. If the evidence establishes that the sale is void, she has other remedies to pursue.

Finally, Defendants also argue that Capital One is "merely an assignee and therefore cannot be liable for any alleged violations not apparent from the face of the contract." Mem. at 8. The parties agree, *see* Mem. at 8; Opp. at 10, that the operative TILA provision is 15 U.S.C. § 1641(a), which provides regarding the liability of assignees that

> any civil action for a violation of [TILA] which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement, except where the assignment was involuntary. For the purpose of this section, a violation apparent on the face of the disclosure statement includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter.

Specifically, "where the disclosure statement or other loan documents fail to include required disclosures or are obviously incorrect, courts have found assignees liable for violations of TILA." *Pierre v. Planet Auto., Inc.*, 193 F. Supp. 3d 157, 164–65 (E.D.N.Y. 2016) (collecting cases).

Here, Plaintiff argues that the TILA violations are facially evident, because while the "Vehicle Invoice" and RISC both reflect the $3,600.00 Service Contract, only the Vehicle Invoice "includes additional 'Add-Ons' that are entirely omitted from the RISC." Opp. at 11. Defendants do not dispute the disparity, but instead argue that Capital One would have been provided both the RISC and the Vehicle Invoice, with the latter "cur[ing] any facial TILA violations that may have been apparent from the RISC." Reply at 9. Therefore, Defendants assert, there would have been no facial violation apparent from the documents.[1]

[1] The Court considers these documents—the RISC, Vehicle Invoice, and other sales documents, ECF No. 16-2—which are extraneous to the Complaint, because the documents are incorporated by reference and are integral to the Complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (allowing consideration of documents "incorporated by reference" and "integral" documents, of which "the complaint 'relies heavily upon its terms and effect[s],'" in deciding a motion to dismiss); Compl. ¶¶ 15–23, 30–34 (discussing the RISC and other sales documents). Furthermore, although there is dispute regarding the substance and delivery of the sales documents, there is no dispute regarding the documents' authenticity, accuracy, or relevance.

The RISC shows that the total sales price is $62,440.16, which consists of a finance charge of $17,070.69, a cash price of $41,317.47, the New York state Motor Vehicle Inspection Fee of $37.00, a registration fee of $240.00, the CCC service contract of $3,600.00, and the dealer processing charge of $175.00. ECF No. 16-2 at 5–9. Therefore, the RISC does not itemize any add-ons, but rather subsumes them within the cash price.

In contrast, although the Vehicle Invoice also reflects a total price of $62,440.16 and a finance charge of $17,070.69, the Vehicle Invoice shows a different total cash price of $45,369.47. *Compare* ECF No. 16-2 at 6 *with* No. 16-2 at 20. The Vehicle Invoice further itemizes the total cash price as consisting of $27,239 for the Vehicle price, $3,600 for the service contract, $10,417 for optional equipment and after-sales services, a $175 for the dealer processing fee, a $37 state inspection fee, $3,661.47 in sales tax, and $240 for license and title fees. *Id.* Additionally, pursuant to Plaintiff's Final Acceptance and Declination form, ECF No. 16-2 at 18–19, the $10,417 of add-on charges consist of Hyundai maintenance, key replacement, RoadVantage theft protection, and tire and wheel protection. *Id*.

Although there is no inconsistency in the overall calculations and certain figures, such as the total price and financing charge, at this stage, the Court declines to dismiss Plaintiff's TILA claim against Capital One. "[W]here on the face of the disclosure statement and other assigned documents there are discrepancies that reveal a TILA violation, courts have found TILA assignee liability." *Pierre*, 193 F. Supp. 3d at 165. Here, the RISC and the Vehicle Invoice arguably show certain discrepancies. *Compare* ECF No. 16-2 at 5–9 *with* ECF No. 16-2 at 20. Such incongruity may show that MB "fail[ed] to include required disclosures," such as itemization of the amount financed and disclaimers regarding the cost and discretionary nature of the add-ons that would be

apparent to Capital One. *Pierre*, 193 F. Supp. 3d at 164. Accordingly, the Court denies Defendants' motion to dismiss Plaintiff's TILA claim as to both Defendants.

### II. Defendant's Motion to Dismiss Plaintiff's New York MVRISA Claim Is Granted

Defendants argue that Plaintiff lacks standing to bring her claim under the New York MVRISA, N.Y. Pers. Prop. Law §§ 301–316, because the statute does not provide a private right of action or authorize civil damages. Mem. at 10.

"In 1956, the New York legislature enacted the Motor Vehicle Retail Instalment Sales Act ('MVRISA') to regulate the sale of cars on credit." *Garcia v. Chrysler Cap. LLC*, No. 15-CV-5949 (ER), 2016 WL 5719792, at *2 (S.D.N.Y. Sept. 30, 2016) (citing N.Y. Pers. Prop. Law § 301). "The MVRISA sets forth detailed requirements governing the form and content of [RISC] for the sale of cars." *Id.* The penalties set forth MVRISA hold violators: (1) "guilty of a misdemeanor and upon conviction [subject to] a fine not exceeding five hundred dollars" and (2) "bar[red from] his recovery of any credit service charge, delinquency or collection charge or refinancing charge on the retail instalment contract involved." N.Y. Pers. Prop. Law § 307. MVRISA "does not explicitly authorize civil damages or a private cause of action." *Forrest v. Simonds*, No. 96-CV-175 (RSP), 1997 WL 610761, at *4 (N.D.N.Y. Sept. 30, 1997) (declining to award damages pursuant to MVRISA in a default judgment).

However, in opposition, Plaintiff cites *Sheffield Com. Corp. v. Clemente*, 792 F.2d 282 (2d Cir. 1986). *See* Opp. at 12–13 (citing *Sheffield*, 792 F.2d at 286–87). Plaintiff quotes *Sheffield* as stating that

> The terms of the M.V.R.I.S.A. indicate that it was intended not only to create rights in favor of individual automobile purchasers but to protect the public generally. Toward this end, the Act subjects the errant seller to civil and criminal penalties. N.Y. Pers. Prop. § 307(1) & (2). The availability of such penalties indicates that the

> Legislature has determined that the public, as well as aggrieved buyers, has an interest in enforcement of the Act. . . .
>
> Failure to comply with M.V.R.I.S.A. does not, however, render a contract completely unenforceable, rather it triggers the imposition of specified statutory penalties. Section 307(1) bars the seller from recovery of "any credit service charge, delinquency or collection charge" if the violation of § 302 was willful.

*Id.* Defendants do not respond to Plaintiff's arguments in their reply. *See* Reply.

Nevertheless, the Court does not read the Second Circuit in *Sheffield* as supporting that there is a private cause of action under the MVRISA. Rather, the Court reads *Sheffield* as supporting only an inference that the statute's provided penalties, *see* N.Y. Pers. Prop. Law § 307(1)–(2), are both criminal (misdemeanor conviction) and civil (barring recovery related to the contract at issue) in nature. *See Sheffield*, 792 F.2d at 286. The civil penalty, barring "recovery of any credit service charge, delinquency or collection charge or refinancing charge on the retail instalment contract involved," would apply as a defense to a suit by the MVRISA violator—and does not necessarily allow a suit by a private third party against the MVRISA violation. N.Y. Pers. Prop. Law § 307(2).

Plaintiff does not identify anything further—and the Court finds nothing—to support a conclusion that the New York state legislature intended a private right of action to arise from MVRISA. Therefore, the Court dismisses Plaintiff's MVRISA claim.

## III. Defendant's Motion to Dismiss Plaintiff's Deceptive Trade Practices Claim under Section 349 and False Advertising Claim under Section 350 Is Denied

Plaintiff also brings claims against MB and, under a theory of derivative liability, Capital One, pursuant to New York General Business Law Sections 349 and 350 for deceptive trade practices and false advertising, respectively. Compl. ¶¶ 53–70. Section 349 prohibits "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in

the furnishing of any service in this state." Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." The term false advertising is defined as advertising which "is misleading in a material respect," and "[i]n determining whether any advertising is misleading, there shall be taken into account . . . not only representations made by statement, . . . but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement." N.Y. Gen. Bus. Law § 350-a.

"To successfully assert a claim under either [Section 349 or Section 350], 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012)). "Claims brought under Section 349 and 350 are not subject to the stringent pleading requirements of Federal Rule of Civil Procedure 9(b)." *Joseph v. Excellence Auto Trade LLC*, No. 16-CV-1534 (FB) (LB), 2017 WL 1157178, at *5 n.9 (E.D.N.Y. Feb. 10, 2017).

Here, Defendants engaged in consumer-oriented conduct through its advertisement of the Vehicle and "automotive sales transaction." *Maas v. Spencer Leasing Corp.*, No. 12-CV-2951 (ADS), 2013 WL 5308859, at *13 (E.D.N.Y. Sept. 18, 2013) (determining that a plaintiff set forth a valid cause of action under Section 349, because "[t]he automotive sales transaction at issue here was inherently 'consumer-oriented' and 'not unique to these two parties'" (quoting *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995))).

Furthermore, "the failure to accurately disclose the finance charge on the RISC, in accordance with TILA, constitutes a materially misleading act." *Joseph*, 2017 WL 1157178, at *5 (collecting cases). *See also Joseph*, 2017 WL 1157178, at *5 (granting judgment for Sections 349 and 350 claims that shared the same underlying conduct—"failure to accurately disclose the finance charge on the RISC"—as alleged for a TILA violation). Here, Defendants allegedly advertised the Vehicle for $12,657.00 less than the actual "Cash Price" stated on the RISC. Compl. ¶ 22.[2] Plaintiff alleges that she and Defendants agreed to the sale, but that the sales documents, which Defendants had refused to give Plaintiff until transfer of the Vehicle, reflected increased pricing and add-ons which had not been agreed upon. *See* Compl. ¶¶ 22–23. These allegations are sufficient to constitute a materially misleading act.

Finally, Plaintiff has sufficiently alleged that she suffered injury as a result of Defendants' conduct. Plaintiff has alleged that she was subjected to a higher price for the purchase of her Vehicle. *See* Compl. ¶¶ 22–23. These allegations are sufficient under Sections 349 and 350. *See Joseph*, 2017 WL 1157178, at *5 (determining that a "plaintiff suffered an actual injury as a result of defendant's deceptive act as he paid $7,805.78 more for the Vehicle than he would have had defendant not solicited him by deceptive practices") (citing *Diaz v. Paragon Motors of*

[2] The Court notes that Plaintiff also alleges that a different vehicle—a used Nissan Rogue—had been advertised for $24,999.00, which is also $12,657.00 less than the Santa Fe's alleged listed cash price of $37,656.00. *See* Compl. ¶¶ 11, 22. The Court notes that the sales documents—specifically the RISC and the Vehicle Invoice—do not appear to show the alleged cash price of $37,656 for the Santa Fe. *See* ECF No. 16-2 at 5–9, 20. Therefore, Defendants point out that Plaintiff's allegations concerning the actual and advertised prices appear to refer to two separate vehicles. *See* Mem. at 15. However, at this motion to dismiss stage, the Court construes Plaintiff's allegations in the light most favorable to her, and interprets Plaintiff's allegations as asserting that Defendants advertised the purchased Santa Fe as at least $12,657 less than the actual sales price. *See* Compl. ¶ 22 ("The 'Cash Price' of the Vehicle stated in the RISC is $37,656.00 - $12,657.00 more than the advertised and agreed upon sale price.").

*Woodside, Inc.*, 424 F. Supp. 2d 519, 543 ("finding an actual injury where plaintiff paid $3,095 above an advertised price of a vehicle")).

Although Plaintiff brings both her Section 349 and Section 350 claims against both Defendants, Compl. ¶¶ 62, 70, these claims arise only from allegations about MB's conduct. *See id.* ¶¶ 57–61, 65–70. Nevertheless, subject to 16 C.F.R. § 433.2 (the "Holder Rule") and New York Personal Property Law § 302(9), "[a]ny holder of [a] consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained." 16 C.F.R. § 433.2. *See also Ramirez v. Nat'l Coop. Bank*, 938 N.Y.S.2d 280, 281–82 (1st Dep't 2011) (reversing dismissal of, *inter alia*, fraud and Section 349 claims against an assignee bank that was "derivatively liable for [a car] dealership's alleged fraud and deceptive business practices"). Accordingly, Plaintiff's Sections 349 and 350 claims survive against both Defendants.

## IV. Defendant's Motion to Dismiss Plaintiff's Common Law Fraud Claim Is Denied

Plaintiff's fifth and final claim of action is common law fraud. Compl. ¶¶ 71–79. "In order to state a claim of fraud under New York common law, Plaintiff must aver: (i) a misrepresentation or material omission of fact which was false and known to be false; (ii) made for the purpose of inducing the other party to rely on it; (iii) justifiable reliance of the other party; and (iv) injury." *Maas v. Spencer Leasing Corp.*, No. 12-CV-2951 (ADS), 2013 WL 5308859, at *10 (E.D.N.Y. Sep. 18, 2013) (citing *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)). Under the heightened pleading standing of Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires that in stating a claim of fraud, the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the

speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Here, Plaintiff has sufficiently alleged her common law fraud claim. As discussed, Plaintiff alleged that Defendants falsely advertised the Vehicle as $24,999.00, and failed to disclose the inclusion of several costly add-ons. *See* Compl. ¶¶ 22–23. Plaintiff has alleged this with the requisite particularity, as she identified the advertisement and fraudulent statements spoken by MB's representative at MB's store on November 2, 2024. *See id.* ¶¶ 11–17. And, Plaintiff has alleged injury in being subjected to higher prices than promised for purchase of the Vehicle. *See id.* ¶¶ 22–23.

Defendants argue that Plaintiff failed to state her fraud claim with the required particularity, and assert that she did not identify the speaker for the alleged fraudulent statements. Reply at 13. However, the Court determines that at this motion to dismiss stage, Plaintiff's identification of the speaker as the "Dealer's representative," *see* Compl. ¶¶ 12–13, is sufficient. *See Maas v. Spencer Leasing Corp.*, No. 12-CV-2951 (ADS), 2013 WL 5308859, at *11 (E.D.N.Y. Sep. 18, 2013) (crediting the plaintiff's allegations regarding misrepresentations by the defendant's "sales representative" and "finance representative" for plaintiff's fraud claim).

In addition, Plaintiff has sufficiently alleged that MB's representative made these false representations with the intent to persuade Plaintiff to purchase the Vehicle. *See* Compl. ¶¶ 75–77; Fed. R. Civ. P. 9(b). ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Plaintiff has also sufficiently alleged at this stage that she justifiably relied on MB's advertisement and its representative's representations about the Vehicle's price. Although the reasonableness of agreeing to purchase a vehicle without having a copy of the sales documents in hand may be subject to dispute, "the question of what constitutes reasonable

reliance is not generally a question to be resolved as a matter of law on a motion to dismiss." *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.,* 25 N.Y.3d 1043, 1045 (2015) (citation omitted). Moreover, a reasonable consumer may have relied on a certain sales price that had been both advertised and confirmed by an in-person representative of the dealer. *See* Compl. ¶¶ 12–13, 22.

Finally, Plaintiff has brought this claim against both Defendants. *See id.* at 11. Like with Plaintiff's Sections 349 and 350 claims, at this stage, Defendant Capital One may be "derivatively liable" for MB's "alleged fraud." *Ramirez v. Nat'l Coop. Bank*, 938 N.Y.S.2d 280, 281–82 (1st Dep't 2011) (citing 16 C.F.R. § 433.2; N.Y. Pers. Prop. Law § 302(9)). Therefore, the Court denies dismissal of Plaintiff's common law fraud claim as to both Defendants.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss Plaintiff's Complaint. The Court GRANTS the motion with regard to Plaintiff's MVRISA claim. However, the Court DENIES the motion in all other respects.

In a separately entered order, the Court refers this case to Magistrate Judge McCarthy for general pretrial, which includes scheduling, discovery, non-dispositive pretrial motions, and settlement.

Dated: September 17, 2026
White Plains, New York

SO ORDERED.

Jessica Clarke

JESSICA G. L. CLARKE
United States District Judge